UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ERIC MUSSHORN,<br><br>Plaintiff,<br><br>v.<br><br>HUNG CAO,[1]<br>Secretary of the Navy,<br><br>Defendant. | ) | Civil Action No. 24-3507 (PLF) |

OPINION

Eric Musshorn ("LT Musshorn"), an active duty Naval Service Lieutenant, brings this action against the Secretary of the Navy ("the Secretary") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq., seeking review of a final agency decision by the Board for Correction of Naval Records ("BCNR" or "the Board"). See Complaint ("Compl.") [Dkt. No. 1] at 1. This matter is before the Court on the parties' cross-motions for summary judgment. See Plaintiff's Motion for Summary Judgment ("Plfs. Mot.") [Dkt. No. 11]; Defendant's Cross Motion for Summary Judgment ("Defs. Mot.") [Dkt. No. 14]. The Court granted defendant's motion for summary judgment and denied LT Musshorn's cross-motion on September 30, 2026. This Opinion explains the reasoning underlying that Order.[2]

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Hung Cao, the current Acting Secretary of the Navy, has been substituted for former Secretary of the Navy Carlos Del Toro as the named defendant in this case.

[2] The papers reviewed by the Court in connection with this matter include: Complaint ("Compl.") [Dkt. No. 1]; Plaintiff's Motion for Summary Judgment and

# I. BACKGROUND

## *A. Statutory Background*

Section 533 of Title 10 of the United States Code governs the determination of the grade and rank "of a person receiving an original appointment in a commissioned grade" in the United States Navy. 10 U.S.C. § 533(a)(1). Such person "shall be credited at the time of such appointment with any active commissioned service . . . that he performed in any armed force . . . before such appointment." Id. Pursuant to 10 U.S.C. § 533 "[t]he Secretary of Defense shall prescribe regulations, which shall apply uniformly among the Army, Navy, Air Force, and Marine Corps, to authorize the Secretary of the military department concerned to limit the amount of prior active commissioned service with which a person receiving an original appointment may be credited under paragraph (1), or to deny any such credit, in the case of a person who at the time of such appointment is credited with constructive service under subsection (b)." Id. § 533(a)(2).

Pursuant to 10 U.S.C. § 533(a)(2), the Secretary of Defense promulgated Department of Defense Directive 1312.03 ("DoDI 1312.03"), dated December 28, 2018. See DoDI 1312.03 at AR0082-92. DoDI 1312.03 provides:

> Subject to the limitations in this section, a person's entry grade, date of rank, and service in grade for promotion eligibility will be determined by the amount of entry grade credit awarded upon original appointment. The amount of entry grade credit will equal

Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plfs. Mot.") [Dkt. No. 11]; Defendant's Cross Motion and Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Defendant's Cross-Motion for Summary Judgment ("Defs. Mot.") [Dkt. No. 14]; Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Plfs. Reply") [Dkt. No. 16]; Defendant's Memorandum in Further Support of Cross-Motion for Summary Judgment ("Defs. Reply") [Dkt. No. 20]; and the Joint Appendix ("App.") [Dkt. No. 21].

> the sum of the prior commissioned service credit and the constructive service credit a person is given.

DoDI 1312.03 ¶ 3.1. For appointments for regular (as opposed to reserve) officers, credit for prior commissioned service "will be awarded on a day-for-day basis for any active commissioned service." Id. ¶ 3.2.a. DoDI 1312.03 permits two exceptions to this general rule. First, pursuant to Paragraph 3.2.c:

> The Secretaries of the Military Departments may limit the amount of credit for prior commissioned service in a field other than the professional specialty for which the person is currently being appointed, but will award no less than a half day credit for each day of such service.

Id. ¶ 3.2.c. Second, pursuant to Paragraph 3.2.d:

> The Secretary of the Military Department concerned may deny prior commissioned service credit for each day of constructive service credit a person who is not currently a regular officer or a reserve officer in an active status receives for the education, training, or experience required for appointment, designation, or assignment as a judge advocate in a Military Department, as a chaplain, or in other officer career fields as designated by the Secretaries of the Military Departments.

Id. ¶ 3.2.d.

Chief of Naval Operations Instruction 1120.11A ("OPNAVINST 1120.11A"), dated July 14, 2015, established Navy-specific regulations governing the award of entry grade credit ("EGC") under 10 U.S.C. § 533 and 10 U.S.C. § 12207, providing guidance for the "[a]ppointment of officers in the Judge Advocate Generals Corps (JAGC)." See OPNAVINST 1120.11A ¶¶ 1.a(1), 1.a(3) at AR0116. OPNAVINST 1120.11A provided that "total entry grade credit granted, other than for officers accessed through [the Navy's Law Education Program ("LEP")], will be limited to 48 months" in order to "obtain experienced former active duty commissioned officers . . . while maintaining uniform and stable management

of the JAGC community." Id. ¶ 11 at AR0123. This limitation could be waived for various reasons, including "when a gross inequity to the applicant would otherwise result." Id. ¶¶ 11.a(1)-(3) at AR0124. OPNAVINST 1120.11A was superseded by DoDI 1312.03. See Defs. Mot. at 8.

A memorandum from the Chief of Naval Personnel ("CNP Memo"), dated April 11, 2023, provides additional guidance for the computation of EGC for JAGC appointees in accordance with DoDI 1312.03. See CNP Memo at AR0024-25. The CNP Memo states that EGC will be calculated as the sum of an officer's total prior commissioned service credit ("PCSC") and total constructive service credit ("CSC"). See CNP Memo ¶ 1.b at AR0024. More specifically, for officers with PCSC in a field other than JAGC,

> such [PCSC] will be calculated at a half day for each day of total prior active commissioned service. The amount of CSC awarded will then be deducted from the calculated amount of [PCSC]. The sum will be the total amount of [PCSC] awarded, which will then be added to the CSC awarded, resulting in the total EGC awarded.

Id. ¶ 1.c. For example, a JAGC applicant "with 10 years of [PCSC] as a submarine officer will be awarded as such: EGC = [PCSC] + CSC. [PCSC] = 10 years X 50% = 5 years - 3 years CSC = 2 years [PCSC] total. CSC = 3 years. EGC = 2 years ([PCSC] total) + 3 years (CSC) = 5 years." Id.

### *B. Factual Background*

LT Musshorn enlisted in the United States Air Force, Texas Air National Guard, on April 16, 2003. (The Complaint lists his enlistment date as May 7, 2003.). See Plfs. Mot. at 9;

Compl. ¶ 24.[3] He later served as an active-duty officer in the Air Force from his commission in April 2007 until his transition to the Connecticut Air National Guard in February 2016. Plfs. Mot. at 9. LT Musshorn then served on active duty orders for 437 days, from April 1, 2016 to July 20, 2017, including a combat deployment to Iraq and Syria. Id. He was promoted to the rank of O-4 on December 3, 2016. Id.

While serving in the Connecticut Air National Guard, LT Musshorn attended the University of Maine School of Law from Fall 2017 to Spring 2020. Plfs. Mot. at 9. In February 2020, he passed the Uniform Bar Exam in Vermont and was subsequently admitted to practice in Vermont and Texas. Id. at 9-10. LT Musshorn then applied for and was offered appointment to the Navy's JAGC. Id. at 10. He was initially assured that he would "receive one half day credit for each day of his prior active commissioned service plus 3 years of constructive service credit for law school totaling approximately 8 years of EGC," allowing him to either maintain his 0-4 rank upon commissioning with the JAGC or qualify for 0-4 at the conclusion of his initial 2-year commitment. See id. at 10. On May 12, 2020, LT Musshorn signed a conditional release for interservice transfer to the Navy, which was approved on June 17, 2020. Plfs. Mot. at 10. On July 10, 2020, he requested ten years of EGC for his prior active commissioned service to maintain his current military grade of O-4. Id. While his request was pending, LT Musshorn transferred from the Air National Guard to the Navy on August 9, 2021. Id.

On August 10, 2021, LT Musshorn was appointed to the JAGC as an O-3 Lieutenant with 4 years of EGC, with an effective date of rank of August 1, 2021. See Plfs. Mot.

[3] Citations to LT Musshorn's Motion for Summary Judgment ("Plfs. Mot.") and Reply to Defendant's Opposition ("Plfs. Reply") are to the ECF-generated pagination.

at 10. On November 21, 2022, the Chief of Naval Personnel ("CNP") denied LT Musshorn's request for 10 years EGC, citing OPNAVINST 1120.11A and directed him to petition the Board for additional relief. See id. (citing Letter from CNP at AR0166). LT Musshorn petitioned the BCNR in February 2023 and requested an award of additional EGC for his prior active commissioned service in accordance with Department of Defense Instruction 1312.03. Id. at 10-11 (citing Application for Correction of Military Record at AR0067-68). His case was assigned docket number NR202300001094. See id. at 11.

On March 9, 2023, the Bureau of Naval Personnel's Office of Legal Counsel provided an advisory opinion to the Board ("First Advisory Opinion"). See First Advisory Opinion at AR0047-50; Plfs. Mot. at 11; Defs. Mot. at 3. The First Advisory Opinion explained that because "DoD Instruction 1312.02 supersedes OPNAVIST 1120.11A for EGC calculation," its 48-month limitation of EGC was inapplicable. See First Advisory Opinion at AR0049-50. The First Advisory Opinion concluded that LT Musshorn's petition "should be approved in part," and the Board should refer the matter to the CNP for recalculation of LT Musshorn's EGC in accordance with DoDI 1312.03, subject to his discretion. See id. at AR0050. LT Musshorn submitted a response to the First Advisory Opinion, requesting that the BCNR "consider the policy identified in DoDI 1312.03 combined with the ability to waive the 48-month cap in OPNAVINST 1120.11A when a 'gross inequity' would occur" and "correct his records to reflect 10 years of EGC." See Plfs. Mot. at 11 (citing AR0059-65).

On September 26, 2023, the Office of Legal Counsel prepared a second advisory opinion ("Second Advisory Opinion"). See Second Advisory Opinion at AR0021-23. The Second Advisory Opinion agreed that LT Musshorn's EGC was erroneously calculated under OPNAVIST 1120.11A, "which limited EGC to applicants such as Petitioner to 48 months." Id.

at AR0021. "Applying the standards of DoD Instruction 1312.03," as "currently [calculated] in accordance with the [CNP Memo]," it concluded that LT Musshorn was entitled to 4.8 years (1,752 days) of EGC. Id. at AR0022. This calculation applied "both permissive reductions set forth in the Department of Defense regulations." See Defs. Mot. at 3. The Second Advisory Opinion also outlined three alternative options: "(1) The Board could determine that in the absence of [the CNP memo], that Petitioner is entitled to full EGC, without the two Secretarial authority limitations permitted by DoD Instruction 1312.03," resulting in an EGC of approximately 12.7 years; (2) the Board could "apply the Secretary's authority to limit prior commissioned service for service in a different professional specialty . . . but not apply the second Secretarial authority to suppress prior commissioned service for each day of constructive service credit, resulting in 7.8 years" of EGC; (3) the Board could "not apply the Secretary's authority to limit prior service by 50 percent, but apply the Secretary's authority to suppress prior commissioned service for each day of constructive service credit" resulting in 9.6 years of EGC. Second Advisory Opinion at AR0022.

LT Musshorn submitted a response to the Second Advisory Opinion, "arguing the 2023 CNP memo could not be retroactively applied to his EGC calculation as it was published nearly three years after his initial request for additional EGC." Plfs. Mot. at 13 (citing AR0031-40). He also argued that his EGC should be calculated by applying DoDI 1312.03, "which allows for full day-for-day credit for prior active commissioned service." Id. In his response, LT Musshorn also pointed out "numerous other errors and inconsistencies with the [Second Advisory Opinion's] calculations and conclusions," including that his prior active commissioned service "was not 3,504 days . . . but 10 years and 1 month." Id.

On January 26, 2024, the Office of Legal Counsel prepared a third advisory opinion ("Third Advisory Opinion"). See Third Advisory Opinion at AR0019-20. The Third Advisory Opinion explained that

> In accordance with [DoDI 1312.03], entry grade credit is the sum of prior commissioned service + constructive service credit. [DoDI 1312.03] permits providing half-day prior commissioned service credit when the commissioned service was in a field other than the professional specialty of the current appointment. Additionally, [DoDI 1312.03] permits denying prior commissioned service credit for each day of constructive service credit received for education required for appointment as a judge advocate. Therefore, Entry Grade Credit equals: Prior Commissioned Service (prior commissioned service X 50% minus constructive service credit) + Constructive Service Credit.

Id. at AR0019. The Third Advisory Opinion corrected LT Musshorn's prior commissioned service period from 9 years, 7 months and 2 days to 10 years, 1 month, and 16 days, and it determined that his constructive service credit was 2 years, 10 months and 14 days. Id. Accordingly, the Third Advisory Opinion determined that LT Musshorn's total EGC was 5 years, 24 days, and recommended that his "lineal number should be adjusted to reflect an additional 1 year and 24 days of entry grade credit." Id. at AR0019-20.

Applying the revised calculations, the Third Advisory Opinion also offered three alternative outcomes: (1) 13 years of EGC, applying neither of the two Secretarial authority limitations permitted by DoD Instruction 1312.03; (2) 7 years, 11 months, and 8 days of EGC, applying "the Secretary's authority to limit prior commissioned service for service in a different professional specialty, but not . . . the second Secretarial authority to suppress prior commissioned service for each day of constructive service credit;" and (3) 10 years, 1 month, 16 days of EGC, applying the Secretary's authority to suppress prior commissioned service for each day of constructive service credit, but not the Secretary's authority to limit prior service by 50

percent. Third Advisory Opinion at AR0020. LT Musshorn submitted a response to the Third Advisory Opinion, "again claiming errors and again requesting ten years of EGC." Plfs. Mot. at 8 (citing AR0013-17).

The Board reviewed LT Musshorn's case and issued a decision on April 3, 2024. See BCNR Decision at AR0001-0004. The Board found "the existence of an injustice warranting . . . partial corrective action" and concluded that LT Musshorn's EGC was "erroneously calculated" based on OPNAVINST 1120.11A when the appropriate reference in effect at the time of LT Musshorn's JAGC appointment was DoDI 1312.03. Id. at AR0003. The Board also concluded that "[a]lthough [the CNP Memo] was not published until after [LT Musshorn's] appointment, . . . calculating his EGC in accordance with [the CNP Memo] is appropriate because it incorporates the more generous application of prior commissioned service found in provisions of [DoDI 1312.03] while applying the limitations permitted which are currently applied by the Navy." Id. The Board therefore found that the CNP Memo was "compliant with [DoDI 1312.03] but also consistent with the way the Navy awarded prior commissioned service in the past." Id. The Board determined that LT Musshorn was "entitled to additional EGC calculated in accordance with [the CNP memo]" and recommended that his naval records be corrected to show that "[LT Musshorn's] EGC was '5 years and 22 days' vice '4 years' upon commissioning on 10 August 2021." Id. at AR0004.

### *C. Procedural Background*

LT Musshorn filed suit on December 17, 2024, seeking review of the Board's April 3, 2024, final agency decision. See Compl. at 1. LT Musshorn brings three counts under the APA: (1) the Board's retroactive application of the CNP Memo is arbitrary, capricious, an abuse of discretion and contrary to law; (2) the Navy's procedure for determining EGC for

JAGC appointees is arbitrary, capricious, an abuse of discretion and contrary to law; (3) the Board's finding that LT Musshorn's EGC must be reduced is arbitrary, capricious, an abuse of discretion and contrary to law. Compl. ¶¶ 48-62. He asks the Court to vacate the Board's decision as unlawful and remand the matter to the Board for further actions. See Compl. at 12.

On June 24, 2025, LT Musshorn filed a motion for summary judgment. See Plfs. Mot. at 1. On August 29, 2025, the Navy filed its cross-motion for summary judgment. See Defs. Mot. at 1. LT Musshorn filed his opposition to defendant's cross-motion on September 29, 2025. See Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Plfs. Reply") [Dkt. No. 16]. The Navy filed its opposition on December 29, 2025. See Defendant's Memorandum in Further Support of Cross-Motion for Summary Judgment ("Defs. Reply") [Dkt. No. 20].

## II. LEGAL STANDARD

### *A. Summary Judgment*

Rule 56(a) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Dickerson v. District of Columbia, Civil Action No. 09-2213 (PLF), 2022 WL 656172, at *5 (D.D.C. Mar. 3, 2022), aff'd, No. 22-7036, 2023 WL 4067787 (D.C. Cir. June 20, 2023). In ruling on a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." Baumann v. District of Columbia, 795 F.3d 209, 215 (D.C. Cir. 2015).

"[W]hen a party seeks review of agency action under the [Administrative Procedure Act ('APA')] . . . the district judge sits as an appellate tribunal." Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). The general standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure does not apply to cases involving review of a final agency action under the APA. Sierra Club v. Mainella, 459 F. Supp 2d 76, 89-90 (D.D.C. 2006). Summary judgment nonetheless "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Alston v. Lew, 950 F. Supp. 2d 140, 143 (D.D.C. 2013) (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)); accord Mashpee Wampanoag Tribe v. Bernhardt, 466 F. Supp. 3d 199, 213 (D.D.C. 2020); Cottage Health Sys. v. Sebelius, 631 F. Supp. 2d 80, 89-90 (D.D.C. 2009). The court "need not and ought not engage in lengthy fact finding, since '[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record . . .'" McDonogh v. Mabus, 907 F. Supp. 2d 33, 42 (D.D.C 2012) (quoting Sierra Club v. Mainella, 459 F. Supp 2d at 90). In other words, "[t]he entire case on review is a question of law." Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

*B. Arbitrary and Capricious under the APA*

Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard is deferential; it requires that agency action simply be 'reasonable and reasonably explained.'" Cmtys. for a Better Env't v. EPA, 748 F.3d 333, 335 (D.C. Cir. 2014) (quoting

Nat'l Tel. Coop. Ass'n v. FCC, 563 F.3d 536, 540 (D.C. Cir. 2009)); see also Kennecott Greens Creek Min. Co. v. Mine Safety and Health Admin., 476 F.3d 946, 954 (D.C. Cir. 2007) ("[The] standard of review under the arbitrary and capricious test is only reasonableness, not perfection."). "[A] court is not to substitute its judgment for that of the agency" if the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Airmotive Eng'g Corp. v. Fed. Aviation Admin., 882 F.3d 1157, 1159 (D.C. Cir. 2018) (second and third alterations in original) (quoting Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). That explanation need not be comprehensive; an agency must provide only a "brief statement" to explain "why it chose to do what it did." Amerijet Int'l, Inc. v. Pistole, 753 F.3d 1343, 1350 (D.C. Cir. 2014). An agency decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

The Court's review, nevertheless, must be "searching and careful." See Nat'l Env't. Dev. Ass'n's Clean Air Project v. EPA, 686 F.3d 803, 810 (D.C. Cir. 2012)). Just as the Court may not "substitute [its] judgment for that of the agency" to set aside an agency action, Rural Cellular Ass'n v. FCC, 588 F.3d 1095, 1105 (D.C. Cir. 2009), it also may not "affirm an agency decision on a ground other than that relied upon by the agency." Manin v. Nat'l Transp. Safety Bd., 627 F.3d 1239, 1243 (D.C. Cir. 2011).

### *C. Deference Due to Military Correction Boards*

The Secretary of a military department, under procedures established by that Secretary and approved by the Secretary of Defense, and "acting through boards of civilians of the executive part of that military department," "may correct any military record" of that

department when he or she "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Navy regulations provide for the establishment of a Board for Correction of Naval Records, which is to consist of civilian officers or employees of the Department of the Navy. See 32 C.F.R. § 723.2(a). While it is "not an investigative body," the BCNR considers applications to determine if there is "error or injustice" in the records of members of the Navy or the Marine Corps. Id. § 723.2(b). In doing so, the BCNR relies on a "presumption of regularity" and "in the absence of substantial evidence to the contrary, will presume" that public officers have "properly discharged their official duties." Id. § 723.3(e)(2). When the BCNR denies relief, it must issue a "statement of the grounds for denial," which can be challenged as the agency's final action, subject to limited exceptions. Id. §§ 723.3(e)(2), 723.6(a)(3).

While the Board's decisions are reviewable under the APA, they are also entitled to a great deal of deference. The Court must uphold the Board's decision to deny a petitioner's request to correct his naval records unless the petitioner can establish that the decision is either "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or not supported by substantial evidence in the record. See 5 U.S.C. §§ 706(2)(A), (E); see also Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997); Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989); Buckingham v. Mabus, 772 F. Supp. 2d 295, 299 (D.D.C. 2011).

Since the statute authorizing the Secretary to correct military records gives the Secretary—and his delegated agent, the Board—a great deal of discretion, the D.C. Circuit has found that decisions by boards like the BCNR receive the benefit of an "unusually deferential application of the 'arbitrary or capricious' standard." Kreis v. Sec'y of Air Force, 866 F.2d at 1514 (explaining that "[i]t is simply more difficult to say that the Secretary has acted

arbitrarily if he is authorized to act 'when he considers it necessary to correct an error or remove an injustice'" (quoting 10 U.S.C. § 1552(a)(1))). Courts have consistently held that personnel decisions made by the BCNR are reviewed under this "unusually deferential standard." See Krzywicki v. Del Toro, 755 F. Supp. 3d 1, 10 (D.D.C. 2024); see also Sissel v. Wormuth, 77 F.4th 941, 947 (D.C. Cir. 2023) ("[T]he cases in which we have emphasized the need for a heightened standard of review to safeguard military judgment have involved decisions concerning active personnel, such as performance reviews and promotion decisions."); Piersall v. Winter, 435 F.3d 319, 324 (D.C. Cir. 2006); McDonough v. Mabus, 907 F. Supp. 2d at 43-44; Bennett v. Wormuth, Civil Action No. 19-0131 (ABJ), 2023 WL 2682112, at *10 (D.D.C. Mar. 29, 2023).

Because the unique military ranking and staffing system operates largely outside of the judiciary's expertise, significant deference is given to the military in this area. See Miller v. Dep't of Navy, 476 F.3d 936, 938-39 (D.C. Cir. 2007) (applying "unusually deferential" standard in military promotion case). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000); McDonough v. Mabus, 907 F. Supp. 2d at 43-44. "Even in the face of an 'undisputed error' or 'conceded injustice,' [courts] must deny the petition for review if the Board offered an adequate explanation 'that a court can measure.'" Appleby v. Geren, 330 F. App'x 196, 198 (D.C. Cir. 2009) (quoting Kreis v. Sec'y of the Air Force, 866 F.2d at 1514).

That said, "the law in this Circuit . . . differentiates between 'military judgment requiring military expertise,' which should be reviewed under the 'unusually deferential'

standard, and 'review of the Board's application of a procedural regulation governing its case adjudication process,' which is reviewed under the traditional arbitrary and capricious APA standard." Wilhelmus v. Geren, 796 F. Supp. 2d 157, 162 (D.D.C. 2011) (quoting Kreis v. Sec'y of Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005)). Where "issues of procedural fairness" are involved, "the traditional APA standard applies." Id. And such agency actions will be set aside if they are contrary to law. See Fisher v. Pension Benefit Guaranty Corp., 151 F. Supp. 3d 159, 165 (D.D.C. 2016) (citing Gonzales v. Oregon, 546 U.S. 243, 255 (2006)); Sissel v. Wormuth, 77 F.4th 941 at 947. Ultimately, however, the meaning of the relevant statutory text is a question for the Court, which "must exercise [its] independent judgment" in interpreting the law. Loper Bright Enterp. v. Raimondo, 603 U.S. 369, 412-13 (2024). Generally, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Jazz Pharms., Inc. v. Kennedy, 141 F.4th 254, 261 (D.C. Cir. 2025) (citing Util. Air Regul. Grp. v. EPA, 573 U.S. 302, 320 (2014)).

## III. DISCUSSION

### *A. The Board's Application of the CNP Memo*

LT Musshorn first argues that the Board's "retroactive application of the 2023 CNP memo is an abuse of discretion not authorized by Congress," and therefore is arbitrary and capricious, an abuse of discretion, and contrary to law. Plfs. Mot. at 11. LT Musshorn also argues that the Board's application of the CNP Memo is contrary to DoDI 1312.03. See id. at 12. He asserts that the "retroactive application" of the CNP Memo to his EGC calculation "impairs the rights he possessed at the time he accepted his original appointment," and "cannot stand as it changes 'the legal landscape in a way that is impermissibly retroactive.'" Id. at 14 (quoting Arkema Inc. v. EPA, 618 F.3d 1, 16-17 (D.C. Cir. 2010)). In response, defendant

emphasizes the Board's determination that "the CNP Memo was both 'compliant with' Department of Defense Instruction 1312.03 as well as 'consistent with the way the Navy awarded prior commissioned service in the past.'" Defs. Mot. at 12 (citing BCNR Decision at AR0003). Defendant argues that "the Board [sic] determination of LT Musshorn's EGC is both consistent with and purely derived from the mandates of Department of Defense Instruction 1312.03." Id.

The record supports LT Musshorn's assertion that the Board applied the CNP Memo to his EGC calculation. See BCNR Decision at AR0004 ("The Board determined that [LT Musshorn] is entitled to additional EGC calculated in accordance with [the CNP Memo]."). In its decision, the Board acknowledged that the CNP memo "was published nearly 3 years after Petitioner's JAG Appointment" and that the "reference in effect at the time of [LT Musshorn's] JAG appointment was [DoDI 1312.03]." Id. at AR0002-03. The Court nevertheless agrees with defendant's argument that a finding that the Board retroactively applied the CNP Memo to LT Musshorn's EGC calculation is "insufficient to warrant overturning the Board's decision." Defs. Mot. at 12. Even if the Board erred in concluding that the CNP Memo could be applied to its calculation of LT Musshorn's EGC, any error was harmless because the Board would have arrived at the same conclusion under its interpretation of the limitations permitted by DoDI 1312.03. See Air Can. v. Dep't of Transp., 148 F.3d 1142, 1156-57 (D.C. Cir. 1998) (holding that even if the agency erred, "[a]s incorporated into the APA, the harmless error rule requires the party asserting error to demonstrate prejudice from the error." (citing 5 U.S.C. § 706)).

The Board explained that "calculating LT Musshorn's EGC in accordance with [the CNP Memo] is appropriate because it incorporates the more generous application of prior

commissioned service found in provisions of [DoDI 1312.03] while applying the limitations permitted which are currently applied by the Navy." BCNR Decision at AR0003; see also CNP Memo at AR0024 ¶ 1 ("In line with [DoDI 1312.03] . . . you are authorized to compute entry grade credit for Judge Advocates General Corps (JAGC) . . . accessions as follows."). The CNP Memo was derived directly from and is consistent with Section 3.2 of DoDI 1312.03. It follows that while the Board's calculation of LT Musshorn's EGC was consistent with the CNP Memo, it was "derived directly from DoDI 1312.03." See Defs. Reply at 2.

LT Musshorn argues that defendant's assertion that the Board's calculation of his EGC "is supposedly supported by the DoDI alone" is a "post-hoc rationalization the Court cannot accept." Plfs. Reply at 4 (citing Defs. Mot. at 12-13). This argument fails, however, given the Board's explanation of the consistency between the Department of Defense's directive and the Navy's internal guidance memorandum. As defendant points out, the Board "considered and explicitly acknowledged that the CNP Memo post-dated [LT] Musshorn's appointment to the Navy JAGC," acknowledged that DoDI 1312.03 was the correct reference in effect at the time of LT Musshorn's appointment, and "still determined that it was appropriate to award Musshorn 5 years and 22 days of EGC." Defs. Mot. at 12 (citing BCNR Decision at AR0003-04). The Board also explained that DoDI 1312.03 "allowed full credit for prior commissioned service," while also "permitting the Secretaries concerned to limit prior commissioned service awarded to half credit for service in an unrelated field," and that the Instruction also "states that creditable experience cannot predate the receipt of a degree or certificate and experience gained in a volunteer or student status will not be counted." BCNR Decision at AR0003.

The Court is especially deferential to an agency's ultimate substantive decision in matters, such as these, that concern the correction of military records. See Powers v. Donley,

844 F. Supp. 2d 65, 70-71 (D.D.C. 2012) (collecting cases). A decision not to correct even an undisputed error or to remove a conceded injustice—including for reasons such as "mootness, lack of harm to the person in question, or inability by such correction to redress the harm claimed"—is "well within" the broad discretion granted to the Secretary and the BCNR. Kreis v. Sec'y of Air Force, 866 F.2d at 1514. "Even in the face of an 'undisputed error' or 'conceded injustice,' [courts] must deny the petition for review if the Board offered an adequate explanation 'that a court can measure.'" McDonough v. Mabus, 907 F. Supp. 2d at 43 (quoting Appleby v. Geren, 330 Fed. Appx. 196, 198 (D.C. Cir. 2009)). The Court finds that the Board "exercise[d] its discretion in a reasoned manner" and provided an adequate and rational explanation for its conclusion that calculating LT Musshorn's EGC in accordance with the CNP Memo and consistent with DoDI 1312.03 was appropriate and did not warrant correction. See Kreis v. Sec'y of Air Force, 866 F.2d at 1512; see also Piersall v. Winter, 435 F.3d at 324.

*B. The Board's Determination of LT Musshorn's EGC is Supported by the Record*

The Court's inquiry in this case focuses not on whether the Board's calculation of LT Musshorn's EGC was substantively correct, but rather on whether the Board's explanations for that choice demonstrate that it permissibly exercised its discretion. See Piersall v. Winter, 435 F.3d at 324; Frizelle v. Slater, 111 F.3d at 176 (explaining that the court "will 'uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned'" (quoting Dickson v. Sec'y of Def., 68 F.3d 1396, 1404 (D.C. Cir. 1995)). LT Musshorn argues that the Board's explanation does not meet this standard and that its decision to limit his EGC was "arbitrary, capricious, an abuse of discretion and contrary to law." Plfs. Mot. at 21.

After reviewing the entire administrative record and the Board's written decision, the Court finds that the Board's decision to award LT Musshorn 5 years and 22 days of EGC was

sufficiently clear and was neither arbitrary nor capricious. See 5 U.S.C. § 706(2)(A). 10 U.S.C. § 533 "plainly gives the Secretary of Defense the authority to issue regulations limiting the amount of prior service credit granted to new JAGC lawyers." McDonough v. Mabus, 907 F. Supp. 2d at 44. Because DoDI 1312.03 and the agency's interpretation of DoDI 1312.03, as outlined in the CNP Memo, are consistent with the Secretary's statutory authority under 10 U.S.C. § 533, LT Musshorn has not shown that the Board's decision to limit his EGC in accordance with these regulations was arbitrary and capricious. See McDonough v. Mabus, 907 F. Supp. 2d at 44.

The record reflects—and the parties agree—that LT Musshorn has 10 years, 1 month, and 13 days of prior commissioned service. See BCNR Decision at AR0004. The Board determined that LT Musshorn's EGC will be awarded according to the formula: EGC = prior commissioned service + constructive service credit, consistent with DoDI 1312.03 ¶ 3.1. See id. Relying on the "more generous application of prior commissioned service found in provisions of" DoDI 1312.03, and "applying the limitations permitted [therein] which are currently applied by the Navy," the Board determined that LT Musshorn's "prior commissioned service = 10 years, 1-month, 13 days X 50% = 5 years and 22 days – 2 years, 10 months, and 8 days constructive service credit = 2 years, 2 months, and 14 days prior commissioned service total." Id. at AR0003-04; see also DoDI 1312.03 ¶¶ 3.2.c-d. After determining that LT Musshorn's "constructive service credit = 3 years – 1-month and 22 days = 2 years, 10 months, and 8 days," the Board concluded that LT Musshorn's total "EGC = 2 years, 2 months, and 14 days (prior

commissioned service total) + 2 years, 10 months, and 8 days [( ]constructive service credit[ )] = 5 years and 22 days." BCNR Decision at AR0004.[4]

LT Musshorn asserts that the Board's decision amounts to a conclusion that his "credit for prior commissioned service, and thus total EGC, must be reduced." Plfs. Mot. at 19 (emphasis added); see id. at 20 ("[T]he BCNR's claim that LT Musshorn's EGC must be limited because the Navy always limits EGC in this manner is demonstrably untrue."); see also Plfs. Reply at 14 ("The Board's core factual finding that LT Musshorn's EGC must be reduced because 'the Navy has consistently limited the amount of prior commissioned service awarded to new JAG appointees' is unquestionably and demonstrably false."). This assertion is not supported by the record.

As the Board noted in its decision, the advisory opinions accepted that DoDI 1312.03 is the correct regulation applicable to LT Musshorn and offered "several calculations for EGC . . . based on the various combinations of prior commissioned service and constructive service credit." BCNR Decision at AR0002. The Board's decision does not state or imply that LT Musshorn's prior commissioned service credit must be reduced. To the contrary, the Board agrees with LT Musshorn that the two limitations are "permitted, not required." See Plfs. Mot. at 20; cf. BCNR Decision at AR0003 (noting that DoDI 1312.03 "permitted the Secretaries concerned to limit prior commissioned service awarded" and that calculating EGC in accordance with the CNP Memo applies "the limitations permitted [in provisions of DoDI 1312.03] which are currently applied by the Navy." (emphasis added)). As defendant explains, the fact that the

---

[4] The Board noted that LT Musshorn's 1 month and 22 days of prior active commissioned service during his law school studies must be subtracted from the maximum allowed constructive service credit of 3 years. See BCNR Decision at AR0004; see also DoDI 1312.03 ¶¶ 3.4.b.(5), 3.4.b.(7)-(8).

Board decided to apply these permissive limitations, "is a far cry from concluding that the Board was 'required to reduce EGC by the maximum amount allowed.'" Defs. Mot. at 15 (quoting Plfs. Mot. at 25).

The Court "will not disturb the decision of an agency that has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" MD Pharm. Inc. v. DEA, 133 F.3d 8, 16 (D.C. Cir.1998) (alterations in original) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43). That is what the administrative record demonstrates in this case. Furthermore, the "unusually deferential" standard afforded by courts to decisions of military boards of correction is "calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d at 793; see Orloff v. Willoughby, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").

The Court is satisfied that the Board provided a reasonable explanation of the process by which it reached its decision. Although LT Musshorn may disagree with the conclusion of the Board, the Court has identified a rational connection between the materials in the administrative record and the decision to limit LT Musshorn's EGC to 5 years and 22 days. See Miller v. Dep't of Navy, 601 F. Supp. 2d 90, 95 (D.D.C. 2009) ("In order to uphold the Secretary's determination, the court must identify a rational connection between the materials in the administrative record and the decision . . . ."). The Board's analysis demonstrated a well-reasoned basis for its decision, "which is all that is required of the defendant." Id. at 96.

*C. The Navy's Procedure for Determining ECG is not Arbitrary and Capricious*

In addition to his disagreement with the Board's calculation of his EGC, LT Musshorn also argues more broadly that the Navy's procedure for calculating EGC for JAGC appointees is arbitrary, capricious, an abuse of discretion, and contrary to law. See Plfs. Mot. at 19-23. LT Musshorn maintains that the CNP Memo "combines both permissive restrictions identified in DoDI 1312.03 to create a mandatory reduction in EGC, contrary to the plain language of DoDI 1312.03" and exceeds the statutory authority granted by the Department of Defense Instruction. Id. at 20; see also Plfs. Reply at 10 ("Defendant's reading of DoDI 1312.03 directly conflicts with the unambiguous and plain reading of 10 U.S.C. § 533(a)(2).").

10 U.S.C. § 533 "plainly gives the Secretary of Defense the authority to issue regulations limiting the amount of prior service credit granted to new JAGC lawyers." McDonough v. Mabus, 907 F. Supp. 2d at 44. Pursuant to the directive that the Secretary of Defense "shall prescribe regulations," 10 U.S.C. § 533(a)(2), the Department of Defense promulgated DoDI 1312.03, which provides that "[f]or regular appointments, except as permitted by Paragraph 3.2.c or 3.2.d, credit will be awarded on a day-for-day basis for any active commissioned service," DoDI 1312.03 ¶ 3.2.a. The CNP Memo, issued by the Chief of Naval Personnel, provides "further guidance on the computation of EGC as applied to Navy JAGC appointees." Defs. Mot. at 9; see CNP Memo at AR0024. The CNP Memo applies both limitations permitted by Paragraph 3.2.c and 3.2.d of DoDI 1312.03 and states that for naval appointees with prior commissioned service in a field other than JAGC, prior commissioned service credit will be calculated

> at a half day for each day of total prior active commissioned service. The amount of CSC awarded will then be deducted from the calculated amount of [PCSC]. The sum will be the total amount of [PCSC] awarded,

> which will then be added to the CSC awarded, resulting in the total EGC awarded to the new accession."

CNP Memo at AR0025 ¶ 1.c.

Defendant argues that "the plain reading" of the relevant sections of DoDI 1312.03 contradicts LT Musshorn's contention that "the two limitations applicable to his EGC (DODI ¶¶ 3.2.c, 3.2.d) are somehow exclusive of each other." Defs. Mot. at 12. To the contrary, defendant maintains, "[t]he word 'or' [is] generally used in the inclusive sense." Id. (quoting Nat'l R.R. Passenger Corp. v. Sublease Int. Obtained Pursuant to an Assignment & Assumption of Leasehold Int. Made as of Jan. 25, 2007, Civil Action No. 22-1043 (APM), 2024 WL 2161814, *16 (D.D.C. Apr. 17, 2024) (quoting Rush v. Kijakazi, 65 F.4th 114, 120 (4th Cir. 2023)); see also Rush v. Kijakazi, 65 F.4th at 120 (explaining that "when a waiter offers a patron 'coffee or dessert,' an ordinary English speaker understands that he can have both coffee and dessert if he so chooses").

LT Musshorn disagrees, arguing that defendant "stretches the legal boundaries when attempting to draw a weak comparison between placing an order at a diner with the interpretation of statute." Plfs. Reply at 11. LT Musshorn insists, however, that DoDI 1312.03's "usage of 'or' when separating the two limitations is critically important, as a reasonable conclusion is that only one restrictive provision may be applied, not both." Plfs. Mot. at 17. He argues that "when examining 'or' within a statute, 'its ordinary use is almost always disjunctive.'" Plfs. Reply at 11 (quoting United States v. Woods, 571 U.S. 31, 45, 2013). LT Musshorn attempts to "further undermin[e]" defendant's reading of 'or' as inclusive by noting that "this Court has ruled 'or' should not be accepted 'as a word interchangeable with 'and.'" Id. (citing Watervale Marine Co. v. U.S. Dep't of Homeland Sec., 55 F. Supp. 3d 124, 142 (D.D.C. 2014)).

"Normally, of course, 'or' is to be accepted for its disjunctive connotation, and not as a word interchangeable with 'and.'" United States v. Moore, 613 F.2d 1029, 1040 (D.C. Cir. 1979). "But," the D.C. Circuit explained, "this canon is not inexorable, for sometimes a strict grammatical construction will frustrate legislative intent." Id. As the Supreme Court observed, "the word 'or' is often used as a careless substitute for the word 'and'; that is, it is often used in phrases where 'and' would express the thought with greater clarity." De Sylva v. Ballentine, 351 U.S. 570, 573 (1956)); see also United States v. Venable, 269 F.3d 1086, 1090 (D.C. Cir. 2001) ("Indeed, even in [carefully crafted legal] documents authors sometimes use the word 'and' to convey the meaning of 'or'—and vice versa."); United States v. Fahnbulleh, 742 F. Supp. 2d 137, 147 (D.D.C. 2010) (noting that the court "cannot simply rely on Congress's usage of 'and' or 'or' to reach a definitive determination regarding the application of" statutory provisions, but rather must view all of these provisions in the context of [the statute]"), aff'd, 752 F.3d 470 (D.C. Cir. 2014).

LT Musshorn's suggests that the "correct" reading of DoDI 1312.03 ¶ 3.2.a restrains the Secretary's power, such that he may only "apply one limitation or the other, not compound them." Plfs. Reply at 10-11. He maintains that the Board was required to employ a procedure that "either limits or denies the amount of prior active commission service." Id. at 12. Not so. The relevant limitations permitted by DoDI 1312.03 ¶ 3.2.a are triggered by two distinct conditional circumstances: The limitation described in paragraph 3.2.c – that the Secretary "may limit the amount of credit for prior commissioned service" – applies only to appointees who have prior commissioned service "in a field other than the professional specialty for which the person is currently being appointed." See DoDI 1312.03 ¶ 3.2.c. The limitation described in paragraph 3.2.d – that the Secretary "may deny prior commissioned service credit" – is only

applicable to appointees who received constructive service credit "for the education, training, or experience required for appointment, designation, or assignment as a judge advocate." See id. ¶ 3.2.d. While these two conditional circumstances are separate and distinct, they are not mutually exclusive: one could imagine an appointee who both has prior commissioned service in a different field and who also received constructive service credit for law school. Indeed, LT Musshorn falls into both categories. See BCNR Decision at AR0001-02.

The Court agrees with defendant that "[n]othing in the plain reading of the [DoDI] indicates any basis for imputing exclusivity to the 'or' in this case," and LT Musshorn "provides no argument" that the two provisions must be mutually exclusive. Defs. Mot. at 12 (citing DoDI 1312.03 ¶ 3.2.a); Defs. Reply at 3. The Court sees no reason why the Secretary would be restricted to applying only one limitation in cases in which both are applicable, such as LT Musshorn's case. Further, as defendant highlights, DoDI 1312.03 ¶ 3.2.e suggests the opposite conclusion. See Defs. Reply at 3. The construction of paragraph 3.2.e closely mirrors the provision at issue in this case, except that "and" replaces the word "or." Compare DoDI 1312.03 ¶ 3.2.e ("Notwithstanding Paragraphs 3.2.c and 3.2.d, credit for prior active or active status commissioned service . . . will be awarded on a day-for-day basis . . ." (emphasis added)) with DoDI 1312.03 ¶ 3.2.a ("[E]xcept as permitted by Paragraph 3.2.c or 3.2.d, credit will be awarded on a day-for-day basis for any active commissioned service." (emphasis added)). The Court concludes that when "read in [its] context and with a view to [its] place in the overall statutory scheme," the word "or" as used in DoDI 1312.03 ¶ 3.2.a does not indicate that the relevant limitations are mutually exclusive. See Jazz Pharms., Inc. v. Kennedy, 141 F.4th at 261 (quoting Util. Air Regul. Grp. v. EPA, 573 U.S. at 320).

The Board considered LT Musshorn's argument that "[t]here is absolutely no requirement that the amount of prior commissioned service credit be limited, as demonstrated by the permissive language of the provision," but determined that "the Navy has consistently limited the amount of prior commissioned service awarded to new JAG appointees." BCNR Decision at AR0003. LT Musshorn counters that this "core factual finding" is "unquestionably and demonstrably false," and that "rather than addressing why LT Musshorn's EGC must be reduced, this perfunctory conclusion highlights the Navy's arbitrary policy of reducing EGC." Plfs. Reply at 14. He argues that the Navy's "argument that its rank-limitation policy is necessary to maintain order and prevent inexperienced supervision fails, as the policy is undermined by the Navy's own actions and programs," including the Law Education Program ("LEP"). Plfs. Mot. at 16.[5] The Court disagrees.

The Board's decision provides a reasoned explanation of its conclusion that the Navy has consistently limited JAGC appointees' prior commissioned service credit. OPNAVINST 1120.11A, the Navy-specific regulation superseded by DoDI 1312.03, explicitly limited the amount of prior commissioned service credit awarded to JAGC appointees to one year. See BCNR Decision at AR0003; see also Defs. Mot. at 8-9 ("Selectees would be awarded one day of prior commissioned service credit for each day of active prior service as a

[5] The Navy's LEP is a "very selective program" that typically selects up to four current officers with two to six years of service and prior leadership experience as a Naval officer to go to law school at the government's expense and subsequently serve on active duty as judge advocates. Defs. Reply at 5-6. LT Musshorn asserts that "the existence of the LEP demonstrates that the Navy's justification for limiting the rank of prior-service judge advocates who enter through other programs is arbitrary and capricious" because "the Navy is applying two contradictory standards to similarly situated individuals—prior-service officers becoming judge advocates." Plfs. Mot. at 16. LT Musshorn "was not eligible" for the "very selective program," and its existence has no bearing on this case. Defs. Reply at 5-6.

commissioned officer, up to a maximum of one year"). LT Musshorn does not dispute the Board's conclusion that DoDI 1312.03 itself "permitted the Secretaries concerned to limit prior commissioned service awarded to half credit for service in an unrelated field." BCNR Decision at AR0003; see Plfs. Mot. at 7-8. The 2023 CNP Memo applies both limitations permitted by DoDI 1312.03, "consistent with the way the Navy awarded prior commissioned service in the past," providing further support for the Board's conclusion that the Navy consistently limits new JAGC appointees prior commissioned service credit. BCNR Decision at AR0003.

The Court finds that both DoDI 1312.03 and the CNP Memo, applying both permitted limitations to EGC calculations, are regulations consistent with the statutory authority delegated by 10 U.S.C. § 533(a)(2). Accordingly, the Navy's procedure for calculating EGC for JAGC appointees is not arbitrary and capricious, an abuse of discretion, or contrary to law.

*D. Plaintiff's Argument Based on Evidence not in the Administrative Record is Procedurally Barred*

In support of his argument that "[i]n addition to being contrary to law, BCNR's proposed formula is arbitrarily applied with inconsistent results," LT Musshorn provides anecdotal examples of other Navy JAG appointees who received varying amounts of EGC based on the Board's calculations. Plfs. Mot. at 21-23. Defendant counters that "[t]hese examples were not part of the administrative record considered by the Board in determining LT Musshorn's EGC, and they therefore are immaterial to the consideration of whether the Board's decision [to limit LT Musshorn's EGC] is supported by the record." Defs. Mot. at 14. LT Musshorn appears to concede this point in his Reply, but he goes on to clarify that "this evidence is not offered to relitigate the merits of the BCNR's calculation, but to prove that the agency's process is fundamentally arbitrary." Plfs. Reply at 14.

In the D.C. Circuit, "[i]t is axiomatic that '[a]n agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'" Kreis v. Sec'y of Air Force, 406 F.3d at 687 (second alteration in original) (quoting Indep. Petroleum Ass'n of Am. v. Babbitt, 92 F.3d 1248, 1258 (D.C. Cir.1996)). "An agency must provide an adequate explanation to justify treating similarly situated parties differently." Burlington Northern and Santa Fe Ry. Co. v. Surface Transp. Bd., 403 F.3d 771, 776 (D.C. Cir. 2005). Still, "the broad discretion afforded" to military boards of correction grants them "significant flexibility in judging the respective merits of each application for review." Wilhelmus v. Geren, 796 F. Supp. 2d at 162.

That said, LT Musshorn's argument on this issue is "procedurally foreclosed." CTS Corp. v. EPA, 759 F.3d 52, 64 (D.C. Cir. 2014). It is "black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" Hill Dermaceuticals, Inc. v. FDA, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984)). "We do not allow parties to supplement the record 'unless they can demonstrate unusual circumstances justifying a departure from this general rule.'" Am. Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp., 940 F.2d 685, 698 (D.C. Cir. 1991)). "Exceptions to that rule are quite narrow and rarely invoked. They are primarily limited to cases where 'the procedural validity of the agency's action remains in serious question,' or the agency affirmatively excluded relevant evidence." CTS Corp. v. EPA, 759 F.3d at 64 (quoting Hill Dermaceuticals, Inc. v. Food & Drug Admin., 709 F.3d at 47). This is not such a case.

Although LT Musshorn purports to challenge the Navy's procedure for determining EGC as arbitrary and capricious, the nature of his evidence "confirms that [his] actual beef is with the substance of the agency's decision." Bellion Spirits, LLC v. United States, 335 F. Supp. 3d 32, 40 (D.D.C. 2018), aff'd, 7 F.4th 1201 (D.C. Cir. 2021); see e.g., Plfs. Reply at 15 ("The BCNR offered no rational basis whatsoever for why [a different JAGC appointee], with a nearly identical career path, received full credit while LT Musshorn was severely penalized."). "[T]he familiar rule that judicial review of agency action is normally to be confined to the administrative record . . . exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny." Esch v. Yeutter, 876 F.2d at 991. "A plaintiff is not entitled to supplement the record merely because she challenges an agency's procedures." Bellion Spirits, LLC v. United States, 335 F. Supp. 3d at 40 (citing Esch v. Yeutter, 876 F.2d at 991). LT Musshorn has not demonstrated the type of gross procedural deficiencies sufficient to invoke the narrow exceptions to this "well-established principle" of administrative law. See Hill Dermaceuticals, Inc. v. FDA, 709 F.3d at 47. If LT Musshorn believes the administrative record below is "too incomplete" to support his challenge to its decision, his request "should be directed to the agency to consider the evidence in the first instance, not this Court." Bellion Spirits, LLC v. United States, 335 F. Supp. 3d at 45 (citing CTS Corp. v. EPA, 759 F.3d at 65 (noting similarly)).

## IV. CONCLUSION

For these reasons, the Court GRANTED defendant's Cross-Motion for Summary Judgment [Dkt. No. 14] and DENIED LT Musshorn's Motion for Summary Judgment [Dkt. No. 11].

An Order consistent with this Opinion was issued on September 28, 2026 [Dkt. No. 23].

SO ORDERED.

Paul L. Friedman

PAUL L. FRIEDMAN
United States District Judge

DATE: 10/19/26